[Cite as *Adena Health Sys. v. Cohen*, 2026-Ohio-2697.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| Adena Health System,<br>Adena Medical Group, LLC, | : | Case No. 23CA18 |
| | : | |
| Plaintiffs-Appellees, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT<br>ENTRY</u> |
| | : | |
| Brian S. Cohen, M.D., et al., | : | |
| | : | |
| Defendants-Counterclaim<br>Plaintiffs-Third Party<br>Complainants-Appellants, | : | |
| | : | |
| v. | : | |
| | : | **RELEASED: 07/08/2026** |
| Jeffrey J. Graham, et al., | : | |
| | : | |
| Third-Party Defendants-<br>Appellees. | : | |

<u>APPEARANCES:</u>

Jeffrey A. Lipps, Jennifer A. L. Battle, and David A. Beck, Carpenter Lipps LLP, Columbus, Ohio, for appellants.

Robert G. Cohen, Robert G. Schuler, and Loriann E. Fuhrer, Kegler, Brown, Hill & Ritter Co., L.P.A., Columbus, Ohio, for appellees.

Wilkin, J.

{¶1} Adena Health System and Adena Medical Group, LLC (hereinafter "Adena") owns Adena Bone and Joint Group in which Appellants, Doctors Brian S. Cohen, J. Troy Thompson, and Aaron Roberts (hereinafter "Doctors") were employed as physicians. The Doctors and Adena had signed an employment agreement. Doctors Cohen, Thompson, and Roberts all submitted their resignation on the same day and provided a 120-day notice pursuant to the

employment agreement. However, within weeks of submitting their resignation, Adena terminated the Doctors' employment and Doctor Cohen, who was present at the medical facility that day, was personally informed of the termination and escorted out of the facility. On the same day, Adena filed a complaint against the Doctors alleging breach of contract, breach of the duty of loyalty, tortious interference, trade secret violations, and civil conspiracy.

{¶2} The Doctors answered and filed a counterclaim alleging multiple claims and also filed a third-party complaint against Adena's board members, third-party defendants, presenting several claims.[1]

{¶3} Adena and third-party defendants filed motions for summary judgment. The trial court granted Adena and third-party defendant's request for summary judgment on several of the Doctors claims, including: wrongful termination; declaratory judgment that the non-compete provision in their employment agreement was unreasonable and resulted in damages for complying with it; the board's failure to supervise Adena's Chief Executive Officer ("CEO") Jeffrey J. Graham and Chief Operating Officer ("COO") Katherine J.

---

[1] The third-party defendants were board members at the time the Doctors were fired from employment and are: Jeff J. Graham – Chief Executive Officer of Adena Health System; Katherine J. Edrington ("Kathi") – Chief Operating Officer of Adena; Joseph J. Watson – Chair of the Adena Board of Trustees; Jennifer McKell – vice chair of Adena Board of Trustee; Stephen F. Hirsch – treasurer of Adena Board of Trustees; Carvel E. Simmons – secretary of Adena Board of Trustees; Ronald W. Coffey – member of Adena Board of Trustees; Anthony C. Fish – member of Adena Board of Trustees; Robert N. French – member of Adena Board of Trustees; Sheilah Gray – member of Adena Board of Trustees; Bartow Henshaw – member of Adena Board of Trustees; Dr. Anthony Lattavo – member of Adena Board of Trustees; Evan J. Phillips Jr. ("Jerry") – member of Adena Board of Trustees; Kevin Shoemaker – member of Adena Board of Trustees; Beth A. Workman – member of Adena Board of Trustees; and Dr. Reggina Yandila – member of Adena Board of Trustees.

Edrington; tortious interference with the Doctors' future employment ventures; and Defamation.

{¶4} In two assignments of error, the Doctors challenge the trial court's decision granting Adena and the third-party Defendant's motions for summary judgment. We affirm in part and reverse in part and remand the matter to the trial court.

## FACTS AND PROCEDURAL BACKGROUND

{¶5} In February 2000, Dr. Cohen entered into an employment agreement with Adena. The agreement was modified several times, with the last amended physician employment agreement signed in January 2018. Dr. Sever joined Adena in February 2005, and he also signed amended physician employment agreements over the years. In 2010, Dr. Roberts and Dr. Thompson began their employment with Adena, signing similar amended physician employment agreements, with Dr. Roberts signing an agreement like Dr. Cohen's in January 2018.

{¶6} The Doctors became dissatisfied with Graham's appointment as the new CEO, the implementation of new policies, and Dr. Cohen's demotion as medical director, among other changes. The Doctors felt that the changes were not for the benefit of the patients. The Doctors vocalized their unhappiness with the changes. This culminated with the Doctors submitting their resignation on March 15, 2021, with a 120-day notice as required by their employment agreements.

{¶7} Prior to their 120-day notice period ending, the Doctors were

terminated on April 12, 2021, effective immediately. Dr. Cohen was at the medical facility when he was notified of his employment termination and was escorted out. On the same day, Adena filed a complaint with five separate claims against the Doctors. The first and second claims alleged breach of contract and breach of loyalty, claiming, among other allegations, that the Doctors violated their employment agreements by soliciting, contacting and/or inducing other employees to leave Adena and joining a competitor. The third claim was tortious interference alleging, among other violations, that the Doctors solicited other Adena employees to leave and interfered with Adena's relationship with its staff. The fourth claim alleged violation of Adena's confidential information and trade secrets. The final claim was civil conspiracy alleging, among other violations, that the Doctors engaged in a malicious combination to injure Adena.

{¶8} The Doctors answered the complaint and filed a counterclaim and a third-party complaint, naming Adena's board of trustees as defendants. The counterclaim included 11 claims, and the third-party complaint included 3 claims. Several of the Doctors' claims are before us for review because the trial court granted Adena's motion for partial summary judgment and the third-party defendant's motion for summary judgment, respectively.

{¶9} In count two of the counterclaim, the Doctors maintain that they were wrongfully terminated. The Doctors asserted that they were wrongfully terminated because their termination violated several public policies and was not pursuant to Adena's amended code of regulations. The trial court granted

Adena's motion for partial summary judgment finding that the Doctors were not employees-at-will, and, therefore, could not raise a public policy violation. The trial court accordingly applied the terms of the contractual agreement and stated that the contract provides that the amended code of regulations were not applicable.

{¶10} In count three of the counterclaim, the Doctors sought a declaratory judgment, asserting that the non-compete clause in their employment agreement was overly restrictive and unreasonable, causing them monetary damage. The trial court granted Adena's motion for partial summary judgment with regard to the Doctors' request for monetary damages, finding no legal basis for recovery.

{¶11} In counts four and five of the counterclaim, the Doctors maintained that Adena committed business defamation and disparagement. The Doctors contend that Adena published false statements to patients, Adena's staff, the press, and the Board regarding, among other things, that the Doctors abruptly left with no reason, Dr. Cohen committed billing fraud, and informed the press about the lawsuit against the Doctors.

{¶12} Finally, in count six of the counterclaim, the Doctors maintained that Adena committed tortious interference with the Doctors' actual and prospective business relationships. One of the Doctors' tortious interference claims was that Adena purchased land known as Prairie Run North to prevent them from practicing at an orthopedic center that OhioHealth planned to build there. Within this argument, the Doctors also contend that Adena's enforcement of the invalid non-compete provision, also interfered with their future business. In summary,

the Doctors reiterate and contend that Adena published false information about the Doctors to patients, staff, and the public, and filed the baseless lawsuit. The Doctors assert that all these actions by Adena constitute intentional interference with their business relationships with patients, OhioHealth, and other participants in the purchase of the land.

{¶13} Another tortious interference claim was that Adena in the summer of 2021, as part of its lease renewal for its urgent care clinic in Circleville, added a clause that no other urgent care or orthopedic center could be established at the same shopping center. The Doctors also claimed that Adena's trial tactics of pursuing baseless discovery from OhioHealth caused OhioHealth to no longer want to partner with the Doctors. This resulted in the dissolution of a future venture where OhioHealth would build an ambulatory surgery center with the Doctors working there.

{¶14} According to the Doctors, Adena's tortious interference did not end there; it further extended when the Doctors contacted the consulting firm Sunday Creek Horizons to assist with their planned ambulatory surgery center project with OhioHealth. According to the Doctors, Adena advised Sunday Creek Horizons not to collaborate with them. Additionally, Dr. Cohen alleges that Adena's wrongful termination and the filing of the complaint against him interfered with his ability to gain employment at Holzer Medical Center.

{¶15} In the Doctor's third-party complaint filed against the Board, they allege in their first count (failure to supervise) that the Board as a whole failed to supervise CEO Graham and COO Edrington. The failure to supervise led to the

Doctors' termination, the filing of a lawsuit against them, and the purchase of Prairie Run North.

**{¶16}** The second count (defamation) in the third-party complaint was against Board Member Watson, CEO Graham and COO Edrington. In the defamation count, the Doctors claimed that CEO Graham and COO Edrington published false statements about the Doctors. These included statements made to other staff members, patients, and to Board members. As to Board Member Watson, the Doctors contend that he communicated with Ed Kunzelman and informed him that the Doctors violated their employment agreements. The Doctors assert that these false statements damaged the Doctors' reputation, dissuaded Board members from supervising and investigating the decision to fire the Doctors, and damaged their business reputation.

**{¶17}** In the third count (tortious interference) of the third-party complaint, the Doctors claim CEO Graham and COO Edrington and the Board interfered with the Doctors' future ventures. Specifically, the Doctors maintain that CEO Graham and COO Edrington baselessly initiated a lawsuit against the Doctors and began harassing OhioHealth, whom they "knew or strongly suspected" that the Doctors were in discussions with. Additionally, the Doctors contend that the Board and CEO Graham purchased Prairie Run North to prevent OhioHealth from purchasing the land to build a medical facility where the Doctors were going to work. In the final count (negligence), the Doctors claim that CEO Graham, COO Edrington, and the Board were negligent in forwarding the Doctors' and the

Doctors' family members' private identification and medical information to a third party, which was then leaked due to a ransomware attack.

{¶18} Adena and third-party defendants responded to the Doctors' counterclaim and third-party complaint. Additionally, Adena filed a motion for partial summary judgment requesting dismissal of the Doctors' wrongful termination claim because it failed as a matter of law. Adena asserted that the Doctors' argument that they were wrongfully terminated in violation of public policy cannot apply because they were not employees-at-will, and legally, public policy violation arguments only apply to at-will-employees. Within this argument, Adena also asserted that the Doctors have no standing to challenge whether the Board violated Adena's amended code of regulations.

{¶19} Adena also requested dismissal of the Doctors' tortious interference claim on all four arguments: purchase of Prairie Run North, inability to compete at the shopping center in Circleville, interference with consulting firm Sunday Creek Horizons, and potential employment with Holzer Medical Center. Adena presented several arguments including the Doctors' failure to identify a particular company or individual with whom the Doctors had a business relationship that Adena allegedly interfered with. Second, with the Prairie Run North property, the Doctors were not the potential purchasers of the land, and Adena was not the buyer, rather it was Maximum Properties, LLC.

{¶20} Adena also argued that the Doctors failed to present evidence that Adena had actual knowledge of the venture between the Doctors and OhioHealth to build a facility on Prairie Run North. And finally, Adena maintains that the

Doctors cannot demonstrate tortious conduct by Adena's purchase of the Prairie Run North through their wholly owned Maximum Property, LLC. This is because Adena does not own the real estate market in Ross County and did not prevent the Doctors from purchasing property in Ross County.[2]

{¶21} Regarding the Doctors' claim of tortious interference with Adena's lease renegotiations at the Circleville Commercial Center, Adena maintains that the Doctors failed to present any evidence of their own negotiations with the same landlord for similar services. Without such evidence, the Doctors cannot satisfy the first element of tortious interference. The Doctors, additionally, cannot meet the second and third elements, as there is no evidence that Adena had actual knowledge of the Doctors' plans to establish a medical facility at the shopping center, and Adena's request for a restrictive clause in their lease agreement is not tortious conduct.

{¶22} Adena maintained that Dr. Cohen failed to demonstrate that there was a prospective relationship with Holzer Medical Center, and that Adena had actual knowledge of that business relationship, and finally, that Adena's firing and initiating this lawsuit is not tortious conduct. Thus, Adena requested dismissal of Dr. Cohen's claim. As to the final tortious claim, Adena maintains that the Doctors failed to present evidence to support the second and third elements of tortious interference; that is, Adena did not have actual knowledge that the Doctors were in discussion with Sunday Creek Horizons, and Adena did not direct or ask Sunday Creek not to do business with the Doctors.

---

[2] Adena in support of its argument included a real estate exhibit demonstrating a company associated with Dr. Cohen purchasing real estate across from Adena's main hospital campus.

**{¶23}** Adena also requested for the dismissal of the Doctors' defamation and slander counts in its motion for partial summary judgment claiming they all fail as a matter of law. Adena contends the patient-scripted statement "I'm not sure, he didn't give a reason" was substantially true, less harmful than stating the doctors were fired, and thus nonactionable under truth and incremental harm doctrine. Adena argues these patient communications are also protected by qualified privilege, with no clear and convincing evidence of actual malice. It further asserts seven recorded operator calls do not contain the challenged statement, are privileged, and show no direction or malice by Adena. Furthermore, new allegations about the CEO and COO statements to the Board before or on March 22, 2021, are time-barred by the one-year statute and, in any event, are privileged board communications lacking actual malice and supported only by references to suspicions and ongoing investigation. Lastly, claims based on "publicizing" the lawsuit are barred by Ohio's absolute litigation privilege and, alternatively, constitute protected opinion in the context of ongoing litigation. Therefore, Adena requested dismissal of Counts Four and Five with prejudice.

**{¶24}** The Board also filed a motion for summary judgment requesting the dismissal of all counts in the Doctors' third-party complaint. The Board first argues that the Doctors lack standing for the "failure to supervise" claim, as directors owe duties to the corporation, not employees. They assert the defamation claim fails due to the truth of the statement, lack of malice, and privilege. Further, the new defamation allegations are time-barred and lack falsity. As to the tortious interference claims, the Board contends the Doctors'

claims fail because they did not identify any specific prospective business relationship with which the Board allegedly interfered. Therefore, the Board requested dismissal of all claims.

{¶25} The trial court, in two separate entries, granted the Board's motion for summary judgment and Adena's motion for partial summary judgment. In granting the Board's motion for summary judgment, the trial court outlined in detail the procedural history of the case and the arguments presented by each party. With regard to the Doctors' failure to supervise claim against the Board, the trial court identified three distinct allegations: the Board allegedly "turned a blind eye" to the conduct of CEO Graham and COO Edrington's leadership and unilateral decision to terminate the Doctors; the Board failed to supervise the finance committee concerning the purchase of Prairie Run North; and the Board allowed the publication of defamatory statements due to lack of supervision. The trial court granted the Board's motion for summary judgment, concluding that there is no genuine issue of material fact. The trial court determined that "the Doctors present no evidence that the board members were acting other than in their official capacities during the times relevant to this action."

{¶26} As for the second claim, defamation, the trial court first considered the Doctors' argument that CEO Graham, COO Edrington, and Board Member Watson defamed them by using scripts prepared by a public relations consultant. The trial court granted the motion for summary judgment. In affirming the Board's motion, the trial court found that the script shared by Adena's staff with the patients was substantially truthful and less damaging than the truth that the

Doctors were terminated.  Additionally, the trial court held that Adena's employees had a qualified privilege to inform patients that the Doctors had left.

{¶27} For the Doctors' second defamation argument, the Doctors claimed that CEO Graham and COO Edrington defamed them by making false statements to the local press and health industry about the pending lawsuit.  The trial court found the statements to be truthful as they accurately reflected the allegations in the complaint.

{¶28} The Doctors' third defamation argument involved statements made by CEO Graham and COO Edrington to the Board members during or before the meeting on March 22, 2021.  The trial court granted the motion for summary judgment because the Doctors raised this claim in the amended counterclaim, which, pursuant to precedent from this court and R.C. 2305.11(A), is barred by the one-year statute of limitations.  The trial court also determined that the claim is precluded because the communication is protected by qualified privilege, and the Doctors failed to establish evidence of actual malice.

{¶29} The trial court also granted the Board's motion for summary judgment as to the Doctors' claim that the Board committed tortious interference with the Doctors' business relationships.  The trial court held that Adena's purchase of the Prairie Run North had no relation with the Doctors as the Doctors did not have any direct ties to the land.  The Doctors failed to present any evidence that they were intending to buy the property.  Rather, the evidence is that OhioHealth was considering purchasing that property in order to build a facility.  Thus, there was no evidence of a relationship between the Doctors and

the seller of the property.  The trial court also held that Adena had a legal right to file a lawsuit and to conduct discovery as permitted by civil rules.

**{¶30}** Approximately a month after granting the Board's motion for summary judgment, the trial court granted Adena's motion for partial summary judgment.  In its decision, the trial court granted Adena's request for summary judgment as to the Doctors wrongful termination claim, declaratory judgment regarding damages related to the non-compete provision within the Doctors employment agreement, defamation and slander claims, and, finally, tortious interference with business relationships claim.

**{¶31}** The trial court in granting Adena's request, held that the Doctors were contractual employees, and, thus, are not employees-at-will who can pursue claims that termination violated public policy.  The trial court also concluded that the terms of the Doctors' employment agreements expressly stated that Adena's rules and regulations do not apply in the event of employment termination.  Therefore, the Doctors' second count in their amended counterclaim fails.

**{¶32}** Regarding the Doctors' request for a declaratory judgment that their non-compete provision in their employment agreement is unreasonable and they are entitled to damages, Adena's motion for summary judgment only challenges their request for damages.  The trial court noted that it "again finds that there are genuine issues of material fact with regard to the declaratory judgment count[,]" but agreed with Adena that the one-year non-compete provision expired, and, additionally, that there is no legal authority for a party to "obtain damages to

compensate them for their own compliance with a non-compete clause in their employment contract."

{¶33} The trial court in addressing the defamation and slander claims, first outlined the statements that the Doctors contend were defamatory and were published to the staff, patients, local press, health industry outlets, and board members. The trial court also noted that the Doctors made similar claims in their amended third-party complaint, which the trial court previously held lacked merit. The trial court determined that the statements were substantially true, and the complete truth would have been worse for the Doctors' reputation. Further, the trial court held that Adena's publicization of the lawsuit was protected by the litigation privilege. Moreover, the statements to Adena's staff met the qualified privilege elements, and the statute of limitations barred the defamation claim of the statements to the board members. In conclusion, the trial court held that there is some documentary evidence "showing that some issues of fact are in dispute, those issues of fact do not rise to the level of genuine issues of material fact[.]"

{¶34} For the final claim, tortious interference, the trial court reiterated that it previously granted summary judgment to the Board regarding the Doctors' assertions involving tortious interference by wrongfully terminating them; spreading false information to patients, staff and the public; deliberately purchasing Prairie Run North; publicizing the initiation of this baseless lawsuit; and intentionally interfering with the Doctors' relationships with the patients and OhioHealth. The trial court also granted Adena's motion for partial summary

judgment as to the Doctors' new claim that Adena tortiously interfered with the Doctors' potential business relationship with a consulting firm, Holzer. The trial court concluded that the Doctors failed to present sufficient evidence that Adena knew that the Doctors had a relationship with the consulting firm, that Adena made the statement with the intention to interfere, and that the Doctors suffered any damage.

{¶35} It is from these judgment entries that the Doctors are appealing.

ASSIGNMENTS OF ERROR

I.     The Trial Court erred when it entered summary judgment in favor of the Third-Party Defendants on Counts 1, 2, 3, and 4[3] of the Third-Party Claimants' Amended Third-Party Complaint in its *Judgment Entry on Third Party Defendants' Renewed Motion for Summary Judgments* entered on June 28, 2023 ("Third-Party J.E."). (Emphasis in original.)

II.    The Trial Court erred when it entered summary judgment in favor of Plaintiffs on Counts 2, 4, 5, and 6 of the Defendants/Counterclaim Plaintiffs' Amended Counterclaim in its *Judgment Entry on Plaintiffs Adena Health System and Adena Medical Group's Renewed Motion for Partial Summary Judgment as To Defendants' Counterclaims for Wrongful Termination (Based on Public Policy and/or Adena's Code of Regulations), Tortious Interference, Defamation and Slander, Declaratory Judgment (Damages Claim Only), and Frivolous Conduct* entered on July 19, 2023 ("Counterclaim J.E."). (Emphasis in original.)[4]

SUMMARY JUDGMENT STANDARD OF REVIEW

{¶36} "Cases decided on summary judgment are reviewed de novo under the standard set forth in Civ.R. 56. *Huntington Nat'l Bank v. Schneider*, 2025-Ohio-2920, ¶ 13, citing *Comer v. Risko*, 2005-Ohio-4559, ¶ 8. And " '[s]ummary

---

[3] The Doctors did not present any argument as to the fourth count, a negligence claim related to the dissemination of their personal information following a cyber attack on the Board's law firm.
[4] The identified Count numbers in the Doctors' second assignment of error, specifically Counts 2, 4, 5, and 6, do not align with the arguments presented. We will address the Doctors' challenge to the counts as they are presented in their brief.

judgment may be granted when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." ' " *Id.*, quoting *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C).

**{¶37}** Civ.R. 56(C) provides that

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

LAW AND ANALYSIS[5]

I.        Wrongful termination

**{¶38}** The Doctors maintain that the trial court erred when it granted Adena's motion for partial summary judgment as to the Doctors' counterclaim of

---

[5] The Doctors do not separate their arguments by assignment of error; rather, they address the relevant counts from each assignment of error together. We will follow the Doctors' arguments as to each count as presented.

wrongful termination.  The Doctors assert that they presented evidence that they were "at-will" employees and Adena's termination of their employment violated several public policies and Adena's own amended code of regulations.

{¶39} In support of their assertion that the trial court erred in granting Adena's motion for partial summary judgment, the Doctors cite to several cases in support of their claim that the presence of a written agreement does not automatically invalidate any claim that the employment was at-will.  Additionally, the employment agreement may contain a specified notice requirement and still be considered an at-will employment.  And in the matter at bar, the Doctors' employment agreement was an at-will arrangement, where the duration of the initial agreement terminated and the parties were currently under a renewal term that could be terminated at any time without cause.  However, the termination cannot violate any public policy.  Finally, the Doctors maintain that their termination was not pursuant to Adena's amended code of regulations.

{¶40} In response, Adena contends that the Doctors were not at-will employees and, as a result, cannot assert a public policy wrongful termination claim.  Adena maintains that this is because the Doctors' employment agreement was for a specific duration of time, five years, which renewed automatically for consecutive one-year terms.  Further, Adena contends that although either party may terminate the agreement after one year with 120-day notice, any termination during this notice period must be for cause, indicating that it is not at-will employment.  In conclusion, Adena differentiates the cases cited by the Doctors, arguing that since the Doctors had employment agreements with a specified

term, their claim of being at-will employees is invalid.

{¶41} The Doctors disagree and contend that Adena's argument that the employment agreement contained an initial term of employment was not raised below.  Thus, the Doctors assert that Adena waived this argument.  However, even if we consider Adena's argument, the Doctors maintain that the initial specified duration for the employment expired a long time ago and is no longer applicable.  Therefore, at the time the Doctors' employment terminated, either party could terminate the employment without cause by providing a 120-day notice.

{¶42} We agree with the Doctors and hold that they are at-will employees.  As a general rule, Ohio follows the doctrine of employment at-will. *See Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103 (1985).  But in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, the Supreme Court of Ohio carved out a public policy exception to this rule: "Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute."  49 Ohio St.3d 228 (1990), paragraph one of the syllabus.

> Under Ohio law, an employment relationship with no fixed duration is deemed to be at-will employment. *Snedigar v. Miami Univ.*, 10th Dist. Franklin No. 11AP-8, 2011-Ohio-4365, 2011 WL 3843939, ¶ 10. The identifying characteristic of an employee-at-will is that either the employer or the employee can terminate employment for any reason which is not contrary to law. *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 258, 652 N.E.2d 948 (1995).

*Underwood v. Cuyahoga Cmty. Coll.*, 2023-Ohio-4180, ¶ 59 (11th Dist.).

{¶43} In the matter at bar, as part of the exhibits submitted, is the

employment agreement between Adena and the Doctors.  The employment

agreement includes the following language:

> 8. <u>Termination of Agreement</u>.
>     . . .
>     (d)     <u>By Either Party</u>.   Upon completion of Physician's first
> (1st) full year of Employment with System, either System or Physician
> may terminate this Agreement at any time upon One Hundred
> Twenty (120) days prior written notice to the other party.

**{¶44}** The Doctors completed the first full year of employment by the time

they submitted their termination notice.  Accordingly, the provision quoted above

from their employment agreement applies.  Therefore, either party can terminate

the employment with a 120-day notice.  Nothing further is required.  So, there is

no reason needed for the termination.  We, thus, conclude that the Doctors were

employees-at-will and their termination notice providing Adena with 120-day

notice was pursuant to their agreement.

**{¶45}** Adena, however, did not honor the agreement and elected to

terminate the Doctors prior to the completion of the 120-day period.  The early

termination of the Doctors' employment is the basis for their claim that Adena

violated public policy by failing to honor the 120-day termination notice.  It has

been "held that employment terminated on the giving of a specified notice is still

employment at-will, and not employment for a specified term."  *Roberts v. Hayes*,

2003-Ohio-5903, ¶ 24 (9th Dist.), citing *La France Electrical Construction &*

*Supply Co. v. Interntl. Bhd. of Electrical Workers, Local No. 8*, 108 Ohio St. 61,

88 (1923).  The Ninth District continued and stated that this is "[s]pecifically,

where an employment agreement requires a written notice of the employee's

intention to terminate employment, such a notice provision does *not* 'establish a

term for the duration of [a] contract, but merely a period of convenient notice[,]'

and the relationship between the employer and the employee remains at-will."

*Id.  See also Cramer v. Fairfield Med. Ctr.*, 182 Ohio App.3d 653 (5th Dist. 2009)

(employment terminated upon giving specified notice remains employment at-

will, not employment for a specified term.).

{¶46} While the Doctors' employment could be terminated during the 120-

day period for cause, this issue remains before the trial court.  This is because

two of Adena's counts in the complaint filed against the Doctors assert that the

Doctors breached their employment agreement and duty of loyalty and good

faith, which may demonstrate termination for cause.

{¶47} The Doctors also argue that the trial court erred in dismissing their

claim that they were terminated in violation of Adena's amended code of

regulations.  The trial court granted Adena's motion for partial summary judgment

concluding that since the Doctors were not employees-at-will, the terms of the

employment contractual agreement prevail.  And the trial court found that the

terms of the employment agreement "expressly state that Adena rules and

regulations do not apply in the event of termination of those contracts."

{¶48} With our finding that the Doctors are employees-at-will, we reverse

and remand the Doctors' argument relating to the code of regulations to provide

the trial court with the opportunity to address whether the Doctors being at-will-

employees impacts the finding that the agreement terms apply.  As a reviewing

court, the trial court should be the first to address issues.  *See Murphy v.*

*Reynoldsburg,* 65 Ohio St.3d 356, 360 (1992) (recognizing that "the trial court's

function cannot be replaced by an 'independent' review of an appellate court.").

{¶49} The trial court erred by granting Adena's motion for partial summary judgment precluding the Doctors from pursuing their wrongful termination claim. Based on our conclusion that the Doctors were employees-at-will, we must reverse the trial court's decision and remand the matter.

## II.     Declaratory Judgment / Damages

{¶50} The Doctors next argue that the trial court erred in granting summary judgment in favor of Adena as to the Doctors' monetary relief request on their declaratory judgment claim. In the Doctors' initial counterclaim, they sought a declaratory judgment that their one-year non-compete restriction in their employment agreement was unenforceable. Two months into the non-compete period, the Doctors filed for partial summary judgment on the claim. When their motion was heard, their non-compete time had expired, but the trial court, at that time, acknowledged that the claim was not moot and that damages could be available if the Doctors suffered losses by adhering to the non-compete covenants. But that order was superseded by Adena's filing of an amended complaint.

{¶51} After the filing of the amended complaint, the Doctors filed an amended counterclaim in which they reasserted the declaratory judgment claim and expressly requested monetary damages. Adena filed its partial summary judgment motion, asserting that damages could not be recovered for the Doctor's compliance. The trial court agreed with "Adena that the Doctors cite no legal theory under which a party, as part of a declaratory judgment claim, can obtain

damages to compensate them for their own compliance with a non-compete clause in their employment contract."

{¶52} The Doctors contend that this conclusion is incorrect because Ohio law allows for monetary damages in declaratory judgment actions when specifically requested and supported by proof. They cite to several cases in support of their claim that the law permits the recovery of damages in declaratory judgment requests.

{¶53} Adena disagrees with the Doctors and maintains that the Doctors voluntarily complied with the one-year non-compete covenant in their employment clause. Further, the Doctors requested monetary damages when they filed the amended counterclaim, which was filed after the expiration of the one-year non-compete covenant, but even then, the Doctors failed to present a theory in support of their damages request. The Doctors' claim for damages for voluntarily complying with the one-year non-compete covenant has no legal standing. Thus, the trial court's decision was correct and should be affirmed. Finally, Adena contends that the cases cited by the Doctors are distinguishable and do not support the Doctors' claim.

{¶54} The Doctors in response assert that Adena is disregarding the Doctors' amended complaint for damages also included a claim that the non-compete covenant was void, unreasonable, and contrary to Ohio law. The Doctors maintain they did not voluntarily comply since they challenged the validity of the non-compete covenant. And despite Adena's attempt to distinguish the Supreme Court of Ohio's case in *Dooley v. Barberton Citizens*

*Hosp.*, 11 Ohio St.3d 216 (1984), the case is applicable and supports the

Doctors' request for damages.

{¶55} We begin with Civ.R. 15(A), which permits the amendment of

pleadings by leave of court.  This occurred in the matter at hand when the trial

court permitted Adena to file an amended complaint.  In response, the Doctors

filed an amended counterclaim.

> "It is well settled that an amended pleading supersedes the original pleading.' *Abram & Tracy, Inc. v. Smith* (1993), 88 Ohio App.3d 253, 263, 623 N.E.2d 704; *Carlock v. Coleman* (Aug. 22, 1990), 7th Dist. No. 89 C.A. 121, 1990 WL 121874, quoting 75 Ohio Jurisprudence Pleading, 343, Section 469 (" 'it is hornbook law that an amended pleading supersedes the original, the latter being [treated] thereafter as nonexistent[.]' ").

*Morris v. Morris*, 2010-Ohio-4750, ¶ 32 (10th Dist.); *See also Dibert v. Carpenter*,

2017-Ohio-689, ¶ 78 (2d Dist.) ("Cynthia's amended counterclaim, filed with the

court's permission pursuant to Civ.R. 15(A), superseded her prior counterclaim.")

{¶56} The Doctors filed their amended counterclaim on January 10, 2023,

asserting in the third count that the non-compete and non-diversion provisions in

their employment agreement prevented fair and open competition and are not

enforceable under Ohio law.  The Doctors asserted that the provisions are

unreasonable in scope.  The Doctors concluded their claim for declaratory

judgment by stating that "[b]y requiring the Doctors to sign and abide by non-

compete restrictions in violation of Ohio law, Adena caused the Doctors to suffer

damages in excess of $25,000 and in an amount to be proven at trial due to their

inability to see patients in the restricted geographic area[.]"

{¶57} The relevant terms of the employment agreement between Adena

and the Doctors include:

> **9.      Non-competition and Confidentiality**.
>
> (a)      **Non-competition**.  During the Term of this Agreement, and for a period of one (1) year following expiration or termination of this Agreement, Physician shall not directly or indirectly, on his or her own behalf or on behalf of any other person, organization or entity, individually or collectively, in any fashion, for or manner, within Ross County, Ohio, or any county contiguous to Ross County, Ohio, engage in the practice of medicine or surgery or provide any other services substantially similar to those required to be provided by Physician under this Agreement. . . .
>
> (b)      **Non-diversion**.  During any Term of this Agreement, and for one year following the expiration or termination of this Agreement, Physician shall not make any attempt to solicit, by any means whatsoever, directly or indirectly, patients of the Practice or System, in order to induce them to seek medical services at any health care organization other than the Practice of System, their assignees or successors.  . . .
>
> During the Term and for one year after the expiration or termination of this Agreement, Physician shall not, directly or indirectly, on Physician's own behalf or on behalf of any other person, organization or entity, individually or collectively, in any fashion, form or manner, employ, engage, or contract in any manner for services of, induce or solicit, verbally or through direct-mailings, the services of any of the System's employees to work for Physician or any person, corporation, partnership, sole proprietorship, governmental agency, organization, joint venture or other entity with whom or which Physician is associated.
>
> . . .
>
> (d)      **Establishment of Medical Practice**.  Nothing in this §9 shall be construed to prohibit Physician, upon the expiration or termination for any reason whatsoever of this Agreement, from establishing a medical practice in a manner and location which does not conflict with any of the provisions of this Section.

**{¶58}** The Doctors are correct in that "[o]nly reasonable noncompetition agreements are enforceable."  *Lake Land Emp. Group of Akron, LLC v. Columbus*, 2004-Ohio-786, ¶ 22.  The parties agree that in the matter at bar, the one-year non-compete provision began when the Doctors were terminated from employment back in April 2021.  And the Doctors did not file a request for

injunctive relief from the enforcement of the non-compete provision, but, instead,

filed a request for declaratory judgment maintaining that the non-compete

provision was unreasonable in their initial counterclaim back in May 2021.  In

June 2021, the Doctors filed a motion for partial summary judgment as to their

declaratory judgment claim.  In December 2022, the trial court denied the

Doctors' motion for partial summary judgment finding:

> there are genuine issues of material fact concerning whether or not the non-compete covenants are enforceable.
> . . .
> Because Defendants' June 25, 2021, Motion for Partial Summary Judgment and all related memoranda were filed prior to the expiration of the one-year period in the non-compete covenant, the parties did not raise the mootness issue.

{¶59} Even after the filing of Adena's amended complaint and the Doctors'

amended counterclaim, the trial court, in partially denying Adena's motion for

partial summary judgment, again reiterated in July 2023:

> For the reasons stated in December 20, 2022, Judgment Entry, this Court once again finds that there are genuine issues of material fact with regard to the declaratory judgment count.
> As noted above, the instant motion does not seek a summary judgment on the entire declaratory judgment count, but rather seeks summary judgment on the request for damages that the Doctors added to their declaratory judgment count when they filed the Amended Counterclaim.

{¶60} In granting Adena's motion for partial summary judgment on the

Doctors' request for damages, the trial court held:

> In the instant case, the one-year non-compete period in the employment agreements between Adena and the Doctors expired over a year ago.
> . . .
> This Court agrees with Adena that the Doctors cite no legal theory under which a party, as part of a declaratory judgment claim, can obtain damages to compensate them for their own compliance

with a non-compete clause in their employment contract.   Thus, Adena's May 4, 2023, Renewed Motion for Partial Summary Judgment is GRANTED with respect to the damages request in Count Three of the Doctors' Amended Counterclaim.

{¶61} The Doctors disagree with the trial court's decision, and one case they rely upon is *Dooley*, 11 Ohio St.3d 216 (1984).  We hold that the case is distinguishable and does not support the Doctors' argument.  In *Dooley*, the issue was whether the hospital, through its by-laws, discriminated against Dr. Dooley because of his practice as a podiatrist.  *Id*. at 217.  The hospitals' by-laws contained a section that subjected podiatrists to limitations and did not grant him surgical privileges.  *Id.* at 217-218.  In addressing the issue, the Supreme Court noted the 1978 enactment of R.C. 3107.342, renumbered to R.C. 3701.351, which states: " '[t]he governing body of any hospital, in considering and acting upon applications for staff membership or professional privileges within the scope of the applicants' respective licensures, shall not discriminate against a *qualified* person[.]' "  *Id*. at 219.

{¶62} As is clear, *Dooley* did not involve the application of non-compete provisions within an employment agreement, as is the issue in the case at bar. Similarly, the Doctors' reliance on *Professional Investigations & Consulting Agency, Inc., d.b.a. PICA v. Kingsland, et al., d.b.a. Owens Enterprises*, 69 Ohio App.3d 753 (10th Dist.), is also misplaced.

{¶63} In *PICA*, Kingsland was first hired as an independent contractor, then transitioned into a part-time employee, and two years later became a full-time employee.  *Id*. at 1267.  For each employment opportunity, the agreement between Kingsland and PICA included a two-year non-compete provision.  *Id*.

Kingsland resigned from PICA in November 1986, agreeing to adhere to the non-competition provision, and was rehired in April 1987, under an oral agreement to abide by the previous contract terms. *Id.* He resigned again in August 1987, and began working for Owens Enterprises. *Id.*

**{¶64}** Because Kingsland was violating the terms of the non-compete provision of his employment contract, PICA in August 1988, requested a temporary restraining order ("TRO"), which was granted the same day by the trial court with a bond set at $50. *Id*. The parties agreed to several extensions of the TRO, which converted it to a preliminary injunction. *Id*. And the final extension entry, included a list of clients that Kingsland and Owens were prohibited from soliciting. Kingsland challenged the issuance of the temporary restraining order arguing that the non-compete provision was unenforceable. The trial court agreed with Kingsland, and on appeal, the Tenth District Court of Appeals upheld the decision, because "[t]he agreement places no temporal or geographic limitations on the covenant." *Id*. at 1269.

**{¶65}** In addressing what damages Kingsland was entitled to, the Tenth District cited Civ.R. 65(C), which governs injunction proceedings. *PICA*, 69 Ohio App.3d 75, at 1270. And, as is typical, the temporary restraining order was granted ex parte. *Id*. However, after hearing arguments from Kingsland and PICA, the trial court determined that the injunction had been wrongfully issued. *Id.* This, the Tenth District held "does not automatically vest Kingsland with a right to damages." *Id*. Therefore, the Tenth District

> remanded to the trial court for a determination on the merits of
> Kingsland's right to damages for wrongful issuance of the temporary

restraining order if the court finds that the temporary restraining order was, in fact, wrongfully issued.

Upon remand, Kingsland's damages, contrary to his contentions, *are to be limited to the amount of the bond*.  (Emphasis added).

*Id*. at 1271.

**{¶66}** In the matter at bar, the Doctors did not file an injunction request; rather, they filed a motion for declaratory judgment.  We decline to extend the Tenth District's application of Civ.R. 65 to grant bond damages to allow the Doctors' request for unlimited damages for abiding by the non-compete provision.

**{¶67}** We are mindful that the Supreme Court has emphasized that the primary purpose of a non-compete provision is to protect employers.  The undue hardship to an employee is a defense to overcome the employer's protection.  In *Raimonde v. Van Vlerah*, the Supreme Court held that "a covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests." 42 Ohio St. 2d 21 (1975), paragraph one of the syllabus.  And in *Acordia of Ohio, L.L.C. v. Fishel*, the Supreme Court outlined the standard in evaluating a non-compete provision:

> Furthermore, "[a] covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Id.,* paragraph two of the syllabus. In determining the reasonableness of a noncompete agreement, we have stated that courts must determine whether the restraints and resultant hardships on the employee exceed what is reasonable to protect the employer's legitimate business interests.

> *Rogers v. Runfola & Assoc., Inc.,* 57 Ohio St.3d 5, 8, 565 N.E.2d 540
> (1991).

2012-Ohio-4648, ¶ 10.

{¶68} We, accordingly, hold that the Doctors' request for damages for complying with the non-compete provision of their employment agreement is not supported by legal authority. We, therefore, affirm the trial court's decision as to this claim.

### III.  Failure to Supervise

{¶69} The Doctors thirdly argue that the trial court erred in denying their third-party claim against the Board for failing to supervise CEO Graham and COO Edrington. The Doctors maintain that the Board neglected their responsibilities by failing to abide with Adena's amended code of regulations and statutory provision in R.C. 1702.30, by allowing CEO Graham to terminate the Doctors and initiate a lawsuit against the Doctors.

{¶70} The Doctors argue that the trial court incorrectly applied a standard requiring conscious, deliberate intent for failure to supervise, which is not applicable outside workers' compensation cases. They maintain that negligence suffices for such claims and that the Board's acquiescence to management's actions does not shield them from liability. The Doctors emphasize that Ohio law allows failure to supervise claims against those with supervisory authority, not just direct employers, and that the Board can be liable for failing to intervene in misconduct, even if they ratified management's proposals without independent review. In conclusion, the Doctors maintain that they presented sufficient evidence and have legal grounds to pursue their claim against the Board for

failing to supervise the actions of the CEO and COO.

{¶71} In response, the Board maintains that the trial court's decision should be affirmed for several reasons. First, the Board's duty is to the corporation and the shareholders of the corporation; not the Doctors or other third parties. Second, they cannot be held responsible for tortious acts that they did not participate in; evidence established that the Board did not formally approve or participate in the decision to terminate the Doctors or bring suit against the Doctors. Third, pursuant to R.C. 1702.30(E)(1), the Board can only be held liable when their conduct was committed with deliberate intent to cause injury to the corporation. Finally, the Board maintains that the law for negligent supervision requires that there must be an employer/employee relationship, which does not exist here between the Board and the Doctors.

{¶72} In their reply, the Doctors disagree with the Board's statement that they cannot be held liable to third-parties, as that applies to fiduciary duties within for-profit corporations. Adena is a non-profit organization and the claim here is failure to supervise. Thus, the claim is based on the Board's failure to fulfill an obligation to act, and the Doctors maintain, citing to *Mills v. Deehr*, 2004-Ohio-2338 (8th Dist.), Ohio law recognizes that an individual who has supervisory power in non-profits can be personally sued for failure to supervise.

{¶73} We begin our de novo review by outlining the relevant statutory provisions and the applicable Adena amended code of regulations. The Board is vested with the authority to conduct the affairs of the non-profit Adena corporation, and the members are generally referred to as directors. *See* R.C.

1702.01(K).  The Board's authority and duties are stated in R.C. 1702.30 which

in relevant part, provides:

> (B) A director shall perform the director's duties as a director, including the duties as a member of any committee of the directors upon which the director may serve, in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances. A director serving on a committee of directors is acting as a director.
>
> . . .
>
> (E) A director shall be liable in damages for any action that the director takes or fails to take as a director only if it is proved by clear and convincing evidence in a court of competent jurisdiction that the director's action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the corporation or undertaken with a reckless disregard for the best interests of the corporation.

R.C. 1702.30(B) and (E).

**{¶74}** Adena's amended code of regulations in Article VII titled medical

staff, in sections 7.01, 7.02, 7.03 and 7.04, respectively, provide:

> Section 7.01.  Relationship to the Board:  The Board has the overall responsibility for the organization and operation of the Medical Staff. The Board shall delegate to the Medical Staff the responsibility for the organization and operation of the Medical Staff. The Medical Staff shall assist the Board in performing these functions in accordance with the Medical Staff Bylaws and Policies. The Medical Staff is accountable to the Board and all actions of the Medical Staff are subject to the ultimate authority of the Board. In the event of a conflict between the Medical Staff and the Board, the Joint Conference Committee will be convened to assist in conflict resolution and to make recommendations to the Board as appropriate.
> Section 7.02 Medical Staff Appointment and Clinical Privileges:  The Board has the ultimate authority and responsibility to grant or deny Medical Staff appointments and clinical privileges. The Board of Trustees shall have the ultimate authority and responsibility to appoint a Medical Staff composed of physicians, podiatrists, dentists, psychologists, and such other healthcare

providers, if any, as set forth in the Medical Staff Bylaws approved by the Board (hereinafter "Practitioners") who have met the qualifications for Medical Staff appointment, as detailed in the Medical Staff Bylaws and Policies, and shall see that such Medical Staff is organized into a responsible administrative unit. The Board shall also have the ultimate authority and responsibility to delineate and grant clinical privileges to Practitioners and Advanced Practice Providers, as such term is defined in the Medical Staff Bylaws, who meet the qualifications for clinical privileges as set forth in the Medical Staff Bylaws and Policies. Procedures for credentialing, appointment/reappointment, and grant/regrant of clinical privileges shall be set forth in the Medical staff Bylaws and Policies.

Section 7.03 Responsibilities:  The organized Medical Staff shall be responsible to the Board of Trustees for:

a. Ensuring the medical care rendered to inpatients and outpatients meets the standards consistent with current standards of care.
b. Advising the Board regarding the Medical Staff's structure.
c. Advising the Board of Trustees in regard to professional and ethical qualifications of applicants for Medical Staff appointment and/or clinical privileges; and, recommending to the Board the scope of privileges to be granted to Practitioners and Advanced Practice Providers.
d. Maintaining such Medical Staff Bylaws and Policies as are necessary for assuring appropriate standards of patient care and maintaining ethical professional practices.
e. Providing leadership and input with respect to the delivery of clinical care.
f. Fulfilling the duties and responsibilities set forth in the Medical Staff Bylaws and Policies and as may otherwise be requested by the Board from time to time.

Section 7.04 Limitation, Suspension, or Termination of Medical Staff Appointment and/or Clinical Privileges:  The Board has the ultimate authority and responsibility to limit, suspend, terminate, or otherwise take appropriate action with respect to Medical Staff appointments and/or clinical privileges. The Board may exercise this authority based upon Medical Staff recommendation or on the Board's own initiative as provided in the Medical Staff Bylaws and Policies. This authority includes, but is not limited to, the authority to summarily suspend Medical Staff appointment and/or Privileges in accordance with the Medical Staff Bylaws. The procedures for corrective action, summary suspension, automatic suspension, and automatic termination of Medical Staff appointments and/or clinical privileges in addition to procedural rights for Practitioners and Advanced Practice Providers shall be set forth in the Medical Staff Bylaws and/or Policies, as

applicable.

{¶75} In the matter at bar, the Doctors are not appointed medical staff, rather, they had contractual employment agreements with Adena. The Board's duty pursuant to the statutory provisions and the amended code of regulations is to carry out the mission of Adena, which is to provide quality patient care. *See* Article 1, Sections 1.01 and 1.02.

{¶76} The Doctors are requesting that we extend the Board's duty to supervise the daily operations of the Bone and Joint Group where they were employed. However, we find no legal support for the Doctor's third-party claim of failure to supervise CEO Graham and COO Edrington.

{¶77} The Doctors rely on the Eighth District Court of Appeals' decision in *Mills v. Deehr*, 2004-Ohio-2338 (8th Dist.), but their reliance is misplaced. We agree with the Board that the *Mills* case is distinguishable as it involved a claim of an employer failing to supervise an employee who sexually abused the plaintiff under the theory of respondeat superior. *Id.*, ¶ 19.

{¶78} We find the Board's reliance on *Berman v. Physical Medicine Associates, Ltd.*, 225 F.3d 425 (4th Cir. 2000), applicable and find the decision persuasive. Berman was not solely a doctor employed at Physical Medicine Associates but was also a stockholder and one of the six directors. *Id.* at 430-431. Berman submitted his resignation effective nine months later, but within 30 days of submitting his resignation letter, the board of directors terminated his employment. *Id.* at 431-432. Berman initiated litigation for breach of fiduciary duty and for breach of employment agreement. *Id.*

**{¶79}** The breach of fiduciary claim was based on Berman's status as an employee in which he maintained that the remaining directors failed to provide him sufficient notice and conduct a reasonable investigation prior to terminating him. *Id*. at 433. Based on that, the Fourth Circuit found in favor of the remaining directors and held:

> And any injury caused by the termination decision itself would be an injury to his interests as an employee, not as a stockholder. Any injury to his interests as an employee would arise from breach of contractual duties by the corporation, not from breach of any fiduciary duties by the directors. Berman's contractual claims for breach of the employment agreement and breach of the severance benefit agreement were submitted to the jury, which found for Berman and awarded him damages.
>
> Moreover, as to Berman's claims under the employment agreement and severance benefit agreement, only the corporation owed Berman a contractual duty; the directors individually owed Berman no contractual duty. Nor did the directors owe Berman as an employee a fiduciary duty; directors cannot act as fiduciaries in their relationship with employees and at the same time discharge their fiduciary duties to the corporation of which they are directors.

*Id*.

**{¶80}** Here, the Doctors are not employees of the Board, but rather, had a contractual agreement with Adena as a corporation. Moreover, the Doctors did not submit evidence to support a claim of deliberate intent by the Board to cause injury to Adena as a corporation. *See* R.C. 1702.30(E). The Doctors are individuals, and the Board is not answerable to individuals for negligence in the performance of its official duties unless malice or corruption is imputable. *See Wierzbicki v. Carmichael*, 118 Ohio App. 239, 243, (8th Dist. 1963). And the Doctors did not submit any evidence to support a claim of deliberate intent by the Board. Accordingly, we agree with the trial court and affirm its decision granting

the Board's motion for summary judgment.

## IV. Tortious Interference[6]

**{¶81}** Under this argument, the Doctors maintain that the trial court erred in granting Adena's motion for summary judgment on their four claims of tortious interference: Adena's purchase of the Prairie Run North property, its overbroad discovery requests to OhioHealth, disrupting the Doctors relationships with their patients, and negatively impacting the Doctors re-entry into Ross County. The Doctors contend that the trial court misconstrued and improperly weighed the evidence and erred in granting Adena's motion for partial summary judgment.

**{¶82}** Adena in response maintains that the Doctors failed to present evidence supporting the elements of tortious interference and the trial court's decision to grant their motion for partial summary judgment should be upheld. Adena asserts that several of the Doctors' assertions involve uninterested third parties.

## A. Law and analysis

**{¶83}** "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 1999-Ohio-260, paragraph one of the syllabus, citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995). And

---

[6] This section addresses the trial court's decision in granting Adena's motion for partial summary judgment and the Board's motion for summary judgment. In granting the motion for partial summary judgment, the trial court referenced and partially incorporated its decision granting the Board's motion for summary judgment.

In determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.*, at paragraph three of the syllabus.

{¶84} "The knowledge required is actual knowledge; constructive knowledge is not sufficient to sustain a cause of action for tortious interference with contract, actual knowledge is required." *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 29 (7th Dist.), citing *Norris v. Philander Chase Co.*, 2010-Ohio-5297, ¶ 26 (5th Dist.).

{¶85} "Tortious interference with a business relationship is similar to tortious interference with a contract, but the result of the interference does not require the breach of contract. It is sufficient to prove that a third party does not enter into or continue a business relationship with the plaintiff." *Emanuel's LLC v. Restore Marietta, Inc.*, 2023-Ohio-147, ¶ 22, (4th Dist.). And "[a] vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim for tortious interference with a business relationship." *Id.* at ¶ 23, citing *Wilkey v. Hull*, 366 Fed.Appx. 634, 638 (6th Cir. 2010).

{¶86} "It is proper for the court to reject a tortious-interference claim 'on the grounds that the defendant was privileged to protect its own business relationships or that the plaintiff presented no evidence of the defendant's intent to interfere.' " *Couzens v. Union Bank & Tr. Co.*, 2024-Ohio-306, ¶ 15 (1st Dist.),

quoting *Alexander v. Motorists Mut. Ins. Co.*, 2012-Ohio-3911, ¶ 31 (1st Dist.).

Additionally, "[t]he failure to demonstrate one out of the five elements bars

recovery for tortious interference with a contract." *Andrews v. Carmody*, 145

Ohio App. 3d 27, 35 (11th Dist. 2001).

**{¶87}** Moreover, "[a]lthough we must review a summary judgment decision

de novo, 'that standard does not supersede our settled practice of not addressing

issues raised for the first time on appeal.' " *Davis v. Diley Ridge Med. Ctr.*, 2025-

Ohio-1940, ¶ 9 (10th Dist.), *appeal not allowed*, 2025-Ohio-3300, quoting,

*Deutsche Bank Natl. Trust Co. v. Stone*, 2021-Ohio-3007, ¶ 12 (10th Dist.).

### i.  Prairie Run North property

**{¶88}** The Doctors assert that Adena purchased the Prairie Run North

property above market price to prevent the Doctors' future venture with

OhioHealth.  The Doctors maintain that they planned a business joint venture

with OhioHealth to develop a new ambulatory surgery center.  The venture could

not proceed because Adena bought the future location of the new surgery center.

Adena had no intention of purchasing the property until learning about the

Doctors' future venture with OhioHealth.  CEO Graham and Board Member

Watson called an emergency Board meeting, which approved the purchase of

the property.  According to the Doctors, this hasty move by Adena demonstrates

their intentional interference with the Doctors' future business venture with

OhioHealth.  They assert that this evidence would allow a jury to find intentional,

improper interference with the Doctors' prospective business relationship with OhioHealth, and the trial court erred by focusing on the lack of a relationship with the land seller.

**{¶89}** Adena presents several arguments in response, contending that the Doctors fail to establish three of the tortious interference elements: lack of relationship between the Doctors and the seller of the property, actual knowledge that Adena knew of the future venture between the Doctors and OhioHealth to purchase this property and build a medical facility on it, and finally, that Adena's conduct of purchasing the property is not in and of itself tortious conduct.

**{¶90}** We first begin by addressing standing. " 'Standing' is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro, Inc. v. Ohio Dep't of Com.*, 2007-Ohio-5024, ¶ 27, citing Black's Law Dictionary (8th Ed.2004) 1442. "Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue." *Id.*, quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994).

**{¶91}** "Whether a party has established standing to bring an action before the court is a question of law, which we review de novo." *State ex rel. Teamsters Loc. Union 436 v. Cuyahoga Cty. Bd. Of Commrs.*, 2012-Ohio-1861, ¶ 10, citing *Cuyahoga Cty. Bd. of Commrs. v. State,* 2006-Ohio-6499, ¶ 23. "Under common-law standing, a plaintiff must demonstrate: (1) an injury; (2) that is fairly traceable to the defendant's allegedly unlawful conduct; and (3) is likely to be

redressed by the requested relief." *Hoover v. Pfeifer*, 2025-Ohio-4909, ¶ 87 (3d

Dist.), citing *Ohioans for Concealed Carry, Inc. v. Columbus,* 2020-Ohio-6724, ¶

12.

**{¶92}** We agree with Adena that the Doctors failed to present any

evidence that they had a relationship with the seller of the Prairie North Run

property.  No evidence was presented that the Doctors were planning on

purchasing the property.  This finding alone is sufficient to warrant affirming the

trial court's decision to grant Adena's motion for partial summary judgment, but

the Doctors also fail to meet other elements for recovery.

**{¶93}** The Doctors are correct that CEO Graham suspected that a facility

would be built at that location to compete with Adena, however, suspicion alone

is not sufficient to meet the higher burden of actual knowledge.  Finally, Adena is

free to conduct its business as it deems appropriate.  The Doctors fail to present

legal authority establishing that the purchase of real estate is tortious conduct.

Adena[7] purchased the property from a seller with no evidentiary connection to

the Doctors.  Whether the purchase was a wise business decision, the Doctors

have no standing to challenge it.  Accordingly, we overrule this argument.

        ii.      Discovery request from OhioHealth

**{¶94}** The Doctors assert that they presented sufficient evidence that

Adena abused the discovery process and harassed OhioHealth in order to

destroy the potential venture between OhioHealth and the Doctors.  And that

Adena's harassing discovery tactics constituted tortious interference.

---

[7] We are aware that Maximum Property LLC purchased the property, but this is a company wholly owned by Adena.

**{¶95}** The Board and Adena maintain that the Doctors failed to present evidence demonstrating the existence of a relationship between them and OhioHealth and that Adena had actual knowledge of this relationship. Additionally, the Board and Adena contend that the discovery requests were relevant to address the Doctors' antitrust counterclaim. Further, there was no evidence that OhioHealth did not establish a relationship with the Doctors because of Adena's discovery requests.

**{¶96}** We affirm the trial court's decision granting the motions for summary judgment because the Doctors failed to present evidence establishing the elements of tortious interference. The Doctors did not present evidence that they had a business relationship with OhioHealth and that Adena had actual knowledge of a business relationship between them. Moreover, the Doctors' evidence that OhioHealth ended any discussions with the Doctors for future ventures is based on hearsay. And "in those instances where the nonconforming summary judgment evidence is hearsay and is not based on personal knowledge, this court has found that an appellate court should disregard the evidence on its de novo review of summary judgment." *Auto Recyclers of Middletown, Inc. v. Stein, LLC*, 2025-Ohio-414, ¶ 39 (12th Dist.).

iii.       Patient Relationships

**{¶97}** The Doctors contend that the trial court did not consider this argument and simply granted Adena's motion for summary judgment on all of the Doctors' tortious interference claims. The Doctors argue that they presented sufficient evidence to demonstrate that Adena intentionally interfered with their

existing patient relationships, causing the Doctors harm.  The Doctors maintain that after the Doctors' employment was terminated, Adena defamed the Doctors to the patients and refused to provide the patients with the Doctors' contact information nor provide the Doctors with the patient's information.

{¶98} We disagree with the Doctors.  After reviewing both the Doctors counterclaim and the third-party complaint, we find that the Doctors did not assert a separate claim that Adena and/or the Board interfered with their relationship with patients.  "A complaint must 'contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.' " *Walker v. JPMorgan Chase Bank*, 2026-Ohio-813, ¶ 7 (1st Dist.), citing Civ.R. 8(A).  "This is known as notice pleading.  One of the basic purposes of notice pleading is to insure, 'that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto.' " *Scassa v. Dye*, 2003-Ohio-3480, ¶ 26 (7th Dist.), quoting *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist. 1982).  And "[a] plaintiff cannot fulfill [their] burden under Civ.R. 56 merely by asserting new claims in response to a properly supported motion for summary judgment." *Bradley v. Sprenger Enters., Inc.*, 2008-Ohio-1988, ¶ 8 (9th Dist.), citing *White v. Mt. Carmel Med. Ctr.,* 2002-Ohio-6446, ¶ 29 (10th Dist.).

{¶99} In their amended counterclaim, the Doctors claim to have asserted a separate claim for interference with patients; however, we find they have merely made conclusionary statements combined with their four specific tortious interference claims, which is insufficient.  *See Weiler v. DLR Grp.*, 2023-Ohio-

1221, ¶ 20 (8th Dist.) ("vague and conclusory allegation is insufficient to establish a claim for tortious interference with prospective business relationships.").  What is more, Adena is correct in that the Doctors failed to identify any individual patients that they had a relationship with outside of their employment with Adena.[8]  *See Allen Nichol v. Am. Health Network*, 2016-Ohio-8346, ¶16 (10th Dist.) ("None of the affidavits demonstrate that appellant and the patients entered into contracts with definite or discrete terms, or that they mutually agreed upon contract terms.  As such, we do not find the conclusory allegations, without any further evidence or explanation, to be competent evidence of a contractual relationship.").

**{¶100}** Moreover, Adena's motion for partial summary judgment and the Board's motion for summary judgment did not address any claim regarding an interference with the Doctors' patient relationship.  As we previously outlined, the Doctors presented four specific tortious interference claims, none of which was interference with patients.

> " 'An appellant cannot change the theory of [its] case and present new arguments for the first time on appeal.' " *State ex rel. S.Y.C. v. Floyd*, 2024-Ohio-1387, ¶ 18, quoting *During v. Quoico*, 2012-Ohio-2990, ¶ 43 (10th Dist.); *see also Miller v. Cardinal Care Mgmt.*, 2019-Ohio-2826, ¶ 23 (8th Dist.) (a party cannot raise new arguments and legal issues for the first time on appeal; failure to raise an issue in the trial court waives that issue for appellate purposes), citing *Cleveland Town Ctr. L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017-Ohio-384, ¶ 21 (8th Dist.); *Wolk v. Paino*, 2011-Ohio-1065, ¶ 36 (8th Dist.) ("Generally, a plaintiff cannot enlarge [its]

---

[8] Doctor Cohen stated that two former patients filed complaints against him with the Medical Board. The trial court found this evidence to be inadmissible, and the Doctors did not object to the admissibility findings of the trial court.  Therefore, this evidence is not before us.  *See Copley Mini Mart, Inc. v. Copley Props., LLC*, 2019-Ohio-33, ¶ 22 (9th Dist.) (although a trial court conducts a de novo review of summary judgment, it is "nonetheless a *review* that is confined to the trial court record.")  (Emphasis sic.).

claims during a defense to a summary judgment motion and is limited
to the allegations of [its] pleading.").

*Yeckley Enters., Inc. v. Huntington Nat'l Bank*, 2024-Ohio-5812, ¶ 50 (8th Dist.).

{¶101} The trial court's entries correctly did not include any judgment on an argument that was not presented, that is, an interference with the Doctors' patients. "A trial court is not permitted to base its decision to grant summary judgment upon an argument which was not asserted in the summary judgment motion." *See Murray v. Grange Mut. Cas. Co.*, 2003-Ohio-3365, ¶ 7 (5th Dist.), citing *Battin v. Trumbull Cty.*, 2002-Ohio-5162 (11th Dist.). Accordingly, this claim is similarly not before us for review.

iv.     Sunday Creek Horizon

{¶102} The Doctors under this claim maintain that Adena interfered with the Doctors' prospective business relationship with the consulting firm Sunday Creek Horizons. The interference, according to the Doctors, came from Adena's administration advising Sunday Creek Horizons that Adena would "rather" they not work with the Doctors. And based on that response, the Doctors assert that Sunday Creek Horizons, whom the Doctors contend has business relationships with Adena, then ended any discussions with the Doctors.

{¶103} We agree with Adena that the Doctors fail to meet the elements of tortious interference, as their claim is based on speculation with no supporting evidence that Adena's statement is the reason that Sunday Creek Horizons did not finalize a contractual agreement with them. *See Harris v. Univ. Hosps. of Cleveland*, 2002-Ohio-983, * 17 (8th Dist.) ("Additionally, while a plaintiff can recover damages from a defendant's tortious interference with a contract, the

measure of those damages is the actual loss sustained by the plaintiff, and not the benefits or profits that flowed to a defendant because of the tortious interference.").  Moreover, the Doctors were negotiating with Sunday Creek Horizons to assist them with the future medical facility that OhioHealth was supposedly going to build on Prairie Run North.  Thus, it was a project that the Doctors were not even a party to—the seller and supposedly OhioHealth were in negotiations.

{¶104} Accordingly, we agree with the trial court's decision granting Adena's motion for partial summary judgment on this claim.

## V.  Defamation

{¶105} The Doctors argue that the trial court erred in granting Adena's motion for partial summary judgment and the Board's motion for summary judgment as they demonstrated sufficient facts that Adena and the Board defamed the Doctors.  The Doctors present three separate categories of defamation: statements to patients, statements to the media, and statements made to the Board by CEO Graham and COO Edrington.

{¶106} The Doctors contend that the trial court minimized the gravity of the false statements Adena published to the patients when it informed the patients that the Doctors abruptly left with no notice, that they just "went ahead and left," "just kind of sprung it on us", and "disappeared."  The Doctors also assert that the trial court erred when it found that the Doctors conceded that they were not claiming defamation per se.  Further, the Doctors contend that the trial

court misapplied the incremental harm doctrine and heightened the actual malice element that is required.

{¶107} With regard to the media statements that some of the Doctors were actively soliciting other employees to leave, the Doctors argue that the trial court erred in finding these statements to be true since they were made after Adena's complaint was filed.  The Doctors also assert that the trial court applied the litigation privilege, and this was an overbroad application of the privilege and wrongfully applied.

{¶108} The Doctors maintain that the trial court erred in applying the statute of limitations as to the false statements made to the Board because the Doctors were not able to discover these statements until after discovery was conducted.  The statements were made in March 2021, by CEO Graham with a slide presentation prepared by COO Edrington that included, among other statements, that the Doctors took Adena's trade secrets and solicited other employees to leave.

{¶109} Adena disagrees with the Doctors' assertions and argues that first, the Doctors' defamation claim was defamation per quod and not per se.  Second, that the scripted statements to the patients were substantially truthful, were not more harmful than the truth, and that Adena met its burden in establishing qualified privilege, which the Doctors failed to rebut by demonstrating actual malice.  Third, Adena contends that the Doctors' defamation claim regarding the statements made to the Board back in March 2021, are barred by the one-year statute of limitation.

A.  Law and analysis

{¶110} "Defamation is a false publication that injures a person's

reputation."  *Gosden v. Louis*, 116 Ohio App. 3d 195, 206 (9th Dist. 1996), citing

*Dale v. Ohio Civ. Serv. Emp. Assn.*, 57 Ohio St.3d 112, 117 (1991).  "Written

defamation is known as libel; spoken defamation is known as slander."  *Id.*, citing

Restatement of the Law 2d, Torts (1977) 177, Section 568.

> To prevail in a defamation case, a plaintiff must demonstrate five elements: (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77.  To establish the requisite degree of fault, the plaintiff must show fault of at least negligence on the part of the defendant, though stricter burdens of proof apply in certain circumstances. *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, 916 N.E.2d 484, ¶ 7 (9th Dist.).

*Fisher v. Ahmed*, 2020-Ohio-1196, ¶ 32 (9th Dist.).

{¶111} And failure to establish a genuine issue of material fact as to any of

the defamation elements renders summary judgment appropriate.  *Wampler v.*

*Higgins*, 2000 WL 730218, *4 (4th Dist. May 31, 2000), *affirmed*, 2001-Ohio-

1293.

{¶112} There are two kinds of defamation; defamation per se occurs when

material is defamatory on its face; defamation per quod occurs when material is

defamatory through interpretation or innuendo.  *Id.* citing *Gosden v. Louis*, 116

Ohio App.3d 195 (9th Dist. 1996).

> The distinction between defamation per se and per quod is important because it has ramifications upon a plaintiff's burden of pleading and proof on the issue of damages. Notably, when a plaintiff

pleads and establishes defamation per se, the plaintiff need not allege or prove any special damages. In fact, general damages are presumed and nominal damages are available in any event.

*Shoemaker v. Cmty. Action Org. of Scioto Cty., Inc.,* 2007-Ohio-3708, ¶ 13 (4th Dist.), citing *McCartney v. Oblates of St. Francis of DeSales,* 80 Ohio App.3d 345, 353 (6th Dist. 1992).

{¶113} "A court must consider the allegedly defamatory statement in the totality of the circumstances, including 'reading an alleged defamatory statement in the context of the entire publication to determine whether a reasonable reader would deem the statement defamatory.' " *Hoffman v. Gunawan*, 2025-Ohio-5697, ¶ 15 (9th Dist.), quoting *Fisher* at ¶ 50. To prevail, the Doctors must

prove falsity as an essential element of a defamation claim and, because falsity is an essential element, a true statement cannot provide the basis for such an action. *Natl. Medic Servs. Corp. v. E. W. Scripps Co.*, 61 Ohio App.3d 752, 755, 573 N.E.2d 1148 (1st Dist. 1989). Therefore, "[i]n Ohio, truth is a complete defense to a claim for defamation." *Montgomery v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-1198, ¶ 30 (8th Dist.), citing *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 445, 662 N.E.2d 1074 (1996); *see also Swoope v. Osagie*, 2016-Ohio-8046, ¶ 33, 76 N.E.3d 686 (8th Dist.) (noting that while a plaintiff must prove falsity as an element of a defamation claim, a publisher may also "completely defend" a defamation action by showing substantial truth). " 'It is sufficient [in defending against a defamation action] to show that the imputation is substantially true, or as it is often put, to justify the "gist," the "sting," or the substantial truth of the defamation.' " *Krems v. Univ. Hosps. of Cleveland,* 133 Ohio App.3d 6, 9, 726 N.E.2d 1016 (8th Dist. 1999), quoting Prosser, *The Law of Torts*, 798-799 (4th Ed. 1971).

*W.A. Smith Fin., LLC v. Doe*, 2026-Ohio-184, ¶ 53 (8th Dist.).

{¶114} There are several defenses to a defamation claim. One such complete defense is the truth of the statement. R.C. 2739.02. For this defense,

Adena and the Board must demonstrate "that the gist, or imputation, of the

statement is substantially true, and, hence, the statement is not false." *Sweitzer*

*v. Outlet Commc'ns, Inc.,* 133 Ohio App. 3d 102, 110 (10th Dist. 1999), citing

*Natl. Medic Serv. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, (1st Dist.

1989).  "Whether a defamatory statement is substantially true is a question of

fact." *Id*.

{¶115} Another defense is qualified privilege, which is "an affirmative

defense to a claim of defamation."  *Hill v. Ohio Dept. of Rehab. and Corr.*, 2021-

Ohio-561, ¶ 17 (10th Dist.).

> A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently, in such cases, there is a legal, as well as a moral, obligation to speak. This is most obvious in the case of those who have entered upon or are considering business dealings with one another.

*Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975).

{¶116} The essential elements to establish qualified privilege are " 'good

faith, an interest to be upheld, a statement limited in its scope to this purpose, a

proper occasion, and publication in a proper manner and to proper parties only.' "

*Hahn v. Kotten*, 43 Ohio St.2d 237, 246 (1975), quoting 33 American

Jurisprudence, Libel and Slander, Section 126, at 124-125 (1941).  And

> A defendant moving for summary judgment on the basis of qualified privilege must present sufficient evidence to demonstrate that no genuine issue of material fact exists as to each of the elements of the affirmative defense. * * * If the defendant can establish that there is no genuine issue of material fact on each element, then the plaintiff can only overcome qualified privilege by establishing with convincing clarity that defendant acted with actual

malice. In a summary judgment motion claiming an affirmative defense, however, the nonmoving plaintiff does not have to present any evidence unless the defendant first satisfies her burden.

*McCoy v. Maxwell*, 2002-Ohio-7157, ¶ 30 (11th Dist.).

**{¶117}** But, "[a] qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice,' that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not." *Id*. at 237. The Doctors' " 'burden of establishing actual malice must be sustained with convincing clarity even when the plaintiff's case is being tested by a defendant's motion for summary judgment.' " *Jenkins v. Sullivan Twp. Trs.*, 2023-Ohio-2345, ¶ 32 (5th Dist.), quoting *Varanese v. Gall*, 35 Ohio St.3d 78, 81 (1988).

**{¶118}** Another legal principle we must take into consideration is the incremental harm doctrine, which " 'measures the incremental reputational harm inflicted by the challenged statements beyond the harm imposed by the nonactionable remainder of the publication.' " *Sullins v. Raycom Media, Inc*., 2013-Ohio-3530, ¶ 40 (8th Dist.), quoting *Ferreri v. Plain Dealer Publishing Co., 142 Ohio App.3d 629, 642–643 (8th Dist. 2001). Moreover, the Eighth District Court of Appeals continued that "[e]ven if a statement is false, if the incremental harm caused by the false statement is determined to be 'nominal or nonexistent,' i.e., causes no more harm to the plaintiff than the truth, the false statement is not actionable." *Id*., quoting *Ferreri* at 643.

i.      Statements to patients

{¶119} The Doctors contend that several of the scripted and unscripted statements made by Adena's staff to the patients were defamatory.  The Doctors outlined several of the statements, including that the Doctors "went ahead and left," "basically" "disappeared," "just up and took off," and "[W]e knew [Dr. Cohen] was leaving in July, but then…he just kind of sprung it on us."  And in response to three patients, one of whom stated that "He must have quit suddenly" Adena's staff member responded "This morning," and to another patient's statement that "they called me and told me [Dr. Roberts] disappeared[,]" Adena's staff responded "Kind of basically, yeah[,]" and finally, another regarding Dr. Thompson, staff members stated that "something changed and they had decided to leave sooner."

{¶120} The Doctors maintain first that the trial court erred in finding that they conceded they did not assert a defamation per se claim.  We agree with the Doctors.  The Doctors in the amended counterclaim and in response to Adena's motion for partial summary judgment, presented a claim that the statements on their face were defamatory.  Thus, they preserved the issue for our review.  We nonetheless, affirm the trial court's decision to grant Adena's motion for partial summary judgment.  This is because the statements are substantially truthful in that the Doctors submitted their resignations in March without providing a reason.

{¶121} As to the defamation per quod claim, we similarly find that the statements were substantially truthful, and additionally, find that the trial court properly applied the incremental harm doctrine, because a complete truthful

statement would be more harmful.  The complete truthful statement is that the Doctors were fired and immediately lost their privileges at the medical facility.

{¶122} Moreover, Adena met its burden in establishing the affirmative defense elements of qualified privilege in its communication with the patients. The patients and Adena have a business relationship and Adena was required to reach out to the patients in order to continue to provide medical services.  With the departure of the Doctors, Adena had to reschedule appointments with the patients and set them up with new medical staff.  And the Doctors failed to rebut the qualified privilege defense by demonstrating actual malice, especially when the statements are substantially truthful.  *See McCoy v. Maxwell*, 2002-Ohio-7157, ¶ 30 (11th Dist.) (actual malice is "with knowledge that the statements are false or with reckless disregard of whether they were false or not.").

{¶123} Accordingly, we overrule the Doctors argument and affirm the trial court's decision granting Adena's motion for partial summary judgment as to this claim.

ii.      Statements to media

{¶124} The Doctors maintain that Adena's press statement in response to an inquiry by Chillicothe Gazette that "Brian Cohen, Aaron Roberts and J.T. Thompson also resigned in March but after their resignations, Adena discovered the three were actively soliciting Adena employees to leave with them.  As a result, Adena terminated the three on April 12 and decided to file the lawsuit[,]" is defamatory. (Brief page 41)  Adena argues that the trial court correctly sustained

Adena's request for summary judgment because the defense of litigation

privilege applies and the statement is an opinion of pending litigation.

{¶125} We begin by outlining the defense of litigation privilege which

> is designed to protect "the integrity of the judicial process" by
> affording participants in litigation with immunity from future
> lawsuits over relevant *statements* made during judicial
> proceedings. *Willitzer*, 6 Ohio St.3d at 449, 453 N.E.2d 693. By
> removing the fear of future consequences, the litigation privilege
> facilitates the disclosure of "pertinent information" and helps to
> "ascertain the truth." *Id.* The litigation privilege is therefore
> applicable to statements that bear "some reasonable relation to
> the judicial proceeding in which" they appear. *Surace*, 25 Ohio
> St.3d 229, 495 N.E.2d 939, at syllabus. It is not applicable,
> however, to conduct that is simply connected in some way to
> litigation.

*Reister v. Gardner*, 2020-Ohio-5484, ¶ 14.

{¶126} The statement made in the matter at bar was not made in a judicial

proceeding, but rather, was a press statement in response to an inquiry by a

news outlet.  We acknowledge that "[w]ithin strict limitations, the privilege has

been extended to extrajudicial communications, including communications

between attorneys."  *Morrison v. Gugle*, 142 Ohio App. 3d 244, 259 (10th Dist.

2001).  One such extension was the Second District Court of Appeals' decision in

*Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, in which the Second

District held:

> Considering the totality of the circumstances and reading the
> statements in the context of the publication and how a reasonable
> reader would interpret them, we conclude that the article was not
> defamatory as a matter of law. First, almost every sentence in the
> article either quotes the complaint or uses the word "alleged" or
> similar terms to describe what the complaint was about. The
> statements of HNB's counsel (Matthews) pertained to HNB's intent

in filing the lawsuit. Reasonable readers, therefore, would understand that the statements summarized the case and HNB's allegations.

2021-Ohio-3049, ¶ 134 (2d Dist.).

**{¶127}** Similar to the statements made in *Horenstein*, Adena's press statement essentially mirrors the language in Adena's amended complaint, stating that "Cohen Roberts, Thompson and Sever have violated the terms of their Employment Agreements by recruiting, contacting, soliciting and /or including employees of [Adena.]"  The press statement concludes by noting that a lawsuit has been filed.  Thus, considering the totality of the circumstances and how a reasonable reader would interpret the statements, we conclude that the article is not defamatory as a matter of law.  We, accordingly, agree with the trial court.

### iii.     Statements to the Board

**{¶128}** Under this claim, the Doctors maintain that the trial court erred in applying the one-year statute of limitation to their defamation claim relating to CEO Graham and COO Edrington's statements and presentation at the March 21, 2021, board meeting, among other statements to the Board.  The Doctors presented this claim in the amended complaint after they discovered the defamatory statements through the discovery process.  The Doctors argue that the discovery rules should apply and extend the one-year statute of limitation not from the date of publication, but from the date the Doctors discovered the statements.

{¶129} The trial court rejected the Doctors' argument by following precedent from this court that did not carve out a discovery exception. *See Glass v. Glass*, 2003-Ohio-4477 (4th Dist.). In *Glass*, we held that the one-year statute of limitation began when the statement was published. *Id.* at ¶ 18; R.C. 2305.11. The Supreme Court of Ohio, however, carved out an exception. *Weidman v. Hildebrant*, 2024-Ohio-2931. In *Weidman*, the Supreme Court held that "the discovery rule applies to claims of libel based on reputational injuries when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication." *Id.* at ¶ 28. The Supreme Court's decision, however, was decided after the trial court's decision was issued in the matter at bar.

{¶130} The trial court's analysis, however, did not end there and it denied the Doctors' claim on the merits. The trial court rejected this claim concluding that Adena and the Board presented evidence demonstrating that the qualified privilege applied. And that the Doctors failed to rebut the privilege by demonstrating actual malice, with the trial court characterizing the relationship between the Doctors and CEO Graham and COO Edrington, as a personal conflict and nothing more.

{¶131} We agree with the trial court's decision finding the qualified privilege applies and the Doctors failed to demonstrate actual malice. In order to demonstrate a qualified privilege of the communication, Adena and the Board had to prove all these elements: "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper

manner and to proper parties only." *Hahn v. Kotten*, 43 Ohio St.2d 237, 246 (1975).

{¶132} The following are the statements that the Doctors maintain were defamatory:

- Board member Jennifer McKell stated that at the meeting they were informed that propriety information was downloaded. Suspicion that confidential information was downloaded and there was consensus that if that was the case, a lawsuit should be filed.
- Kevin Shoemaker similarly stated that they were informed that information is being reviewed of confidential information being transferred to outside the organization. And that the law firm Bricker and Eckler are looking into it. His memory is that both CEO Graham and COO Edrington talked about it. He continued and stated that the violation was that the law firm's investigation is to determine what was downloaded by doctors (did not name the doctors, but he did hint that it was about the doctors who resigned and others).
- CEO Graham contacted Board member Watson directly "Doctors were soliciting other employees" and that they were recruiting for OhioHealth.
- A text message from CEO Graham to Dr. Jack Berno, at the time Chief of Staff: "We will and I am surprised too at Chamberlin. Jim [Dr. Fleming] called him and he said that they have not signed with anyone. They are working with two organizations. One is with ownership. He said that Cohen recruited them. He is not upset with Adena or us. Just seemed like an opportunity he could not pass on."
- The slides prepared by COO Edrington with the heading "Rumors" and "speculation" that Dr. Cohen is potentially withholding billings from the Adena system. And that it is being investigated.
- CEO Graham stating that Dr. Cohen engaged in billing fraud.

{¶133} The statements were made in an executive session and the subject related to the operations of Adena's business. Although the text message to Board Member Watson occurred outside the executive session, it was merely a reiteration of information already conveyed to the Board and

included in one of the claims in Adena's complaint, which the Board approved for filing.

**{¶134}** We also conclude that the Doctors fail to demonstrate an issue of material fact in demonstrating actual malice.  There is no evidence supporting actual malice to rebut the application of qualified privilege as to the statements to the Board.

**{¶135}** Accordingly, we affirm the trial court's decision as to the Doctors' defamation claims.

CONCLUSION

**{¶136}** We sustain the Doctors wrongful termination claim but overrule all other claims, affirming the trial court's decision on those matters.  Thus, we affirm in part, reverse in part, and remand the matter to the trial court.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE IS REMANDED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and the CAUSE IS REMANDED.  Appellant and appellee shall split the costs equally.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

## *NOTICE TO COUNSEL*

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**